**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA**

HALLMARK SPECIALTY INSURANCE COMPANY, )
)
)
Plaintiff, )
)
v. )
)
THE KINJAC CORPORATION; JOHNSON & JOHNSON, INC.; and ANGELIA HICKS AKINS as Personal Representative of the ESTATE OF EZELL ALEXANDER STEPHENS, )
)
)
)
)
)
)
Defendants. )

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

Plaintiff, Hallmark Specialty Insurance Company ("Hallmark"), by and through its undersigned counsel, and for its Complaint for Declaratory Judgment against The Kinjac Corporation, Johnson & Johnson, Inc., and Angelia Hicks Akins as Personal Representative of the Estate of Ezell Alexander Stephens, states as follows:

1.    This is an action seeking a judicial declaration that Hallmark has no duty to defend and indemnify The Kinjac Corporation ("Kinjac") and Johnson & Johnson, Inc. ("Johnson") (collectively, the "Insureds") under Excess Liability Policy, No. 77HX229A74, issued to Johnson for the period of January 1, 2023 to January 1, 2024 ("Excess Policy"), with respect to the lawsuit captioned *Angelia Hicks Akins, as Personal Representative of the Estate of Ezell Alexander Stephens v. The Kinjac Corporation, a Florida Profit Corporation*, Case No. 2024 CA 115, pending in the Circuit Court of the Third Judicial Circuit, Madison County, Florida (the "Underlying Action"). A copy of the Excess Policy is attached hereto as Exhibit 1.

## PARTIES

2.        Hallmark is an insurance company duly organized and existing under the laws of the State of Oklahoma with its principal office located in Oklahoma City, Oklahoma.

3.        Kinjac is a corporation duly organized and existing under the laws of the State of Florida with its principal place of business located in Lake City, Florida.

4.        Johnson is a corporation duly organized and existing under the laws of the State of Florida with its principal place of business located in Lake City, Florida.

5.        Angelia Hicks Akins is the Personal Representative of the Estate of Ezell Alexander Stephens. She is a resident of Madison County, Florida and therefore is a citizen of the State of Florida.

6.        On October 4, 2024, Angelia Hicks Akins (the "Underlying Plaintiff") as Personal Representatives of the Estate of Ezell Alexander Stephens, filed her initial complaint in the Underlying Action. A copy of the initial complaint filed in the Underlying Action is attached hereto as Exhibit 2.

7.        On March 4, 2025, the Underlying Plaintiff filed an Amended Complaint ("AC"). The Amended Complaint filed in the Underlying Action is attached hereto as Exhibit 3.

8.        On July 10, 2025, the Underlying Plaintiff filed a Second Amended Complaint ("SAC"). The SAC filed in the Underlying Action is attached hereto as Exhibit 4.

## JURISDICTION AND VENUE

9.        This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the purposes of determining a question of actual controversy between the parties.

10.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1). There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     An actual and justiciable controversy exists regarding the parties' respective rights and obligations under the Excess Policy, and that controversy is ripe for adjudication.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in Madison County, Florida.

## **THE EXCESS POLICY**

13.     StarStone issued the Excess Policy to Johnson for the period of January 1, 2023 to January 1, 2024.  See Ex. 1 at HSIC00002.

14.     The Excess Policy's Insuring Agreement, in relevant part, provides:

A.     COVERAGE

This insurance only applies to injury or damage covered by the UNDERLYING INSURANCE, and that takes place during OUR policy period. WE will pay on YOUR behalf the ULTIMATE NET LOSS in excess of the applicable limits of the UNDERLYING INSURANCE listed in the attached Schedule of UNDERLYING INSURANCE (whether such insurance is collectible or not). If the UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then WE shall not pay such loss.

\*     \*     \*

C.     DEFENSE PROVISIONS AND SUPPLEMENTAL PAYMENTS

1.     DEFENSE PROVISIONS

When insurance is available to the INSURED in any UNDERLYING INSURANCE, WE shall not be called upon to assume charge of the investigation, settlement or defense of any SUIT brought against the INSURED, but WE shall have the right and be given the opportunity to be associated in the defense and trial of any SUITS relative to any OCCURRENCE which, in OUR opinion, may create liability on the part of US under the terms of this policy.

Id. at HSIC00031.

15.    Hartford Fire Insurance Company ("Hartford") issued Commercial General Liability Package Policy, No. 83 UEN 0D1238, to Johnson for the period of January 1, 2023 to January 1, 2024 (the "Primary Policy").

16.    The Primary Policy is the UNDERLYING INSURANCE listed in the Excess Policy's Schedule of UNDERLYING INSURANCE. See Ex. 1 at HSIC00004-5.

17.    SECTION IV. CONDITIONS, Paragraph F. DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT, of the Excess Policy provides:

1.    YOU must see to it that WE receive prompt written notice of an OCCURRENCE or an offense which may result in a claim. Notice should include:

    a.    How, when and where the OCCURRENCE or offense took place;

    b.    The name and addresses of any injured persons and witnesses.

2.    If a claim is made or SUIT brought against any INSURED, YOU must see to it that WE receive written notice of the claim or SUIT as soon as practicable.

3.    YOU and any other INSURED must:

    a.    Immediately send US copies of any demands, notices, summons or legal papers received in connection with the claim or SUIT.

    b.    Authorize US to obtain records and other information;

    c.    Cooperate with US in the investigation, settlement or defense of the claim or SUIT;

    d.    Assist US, upon OUR request, in the enforcement of any right against any person or organization which may be liable to the INSURED because of injury or damage to which this policy may also apply.

4.      No INSUREDS shall make or authorize an admission of liability or attempt to settle or otherwise dispose of any claim or SUIT without OUR written consent.

Id. at HSIC00035.

## THE UNDERLYING ACTION

18.      On October 4, 2024, the Underlying Plaintiff filed the Underlying Action against, *inter alia*, Kinjac. See Ex. 2.

19.      The Underlying Plaintiff alleges that Kinjac owns and operates a Marathon Gas station located at 1407 US Highway 90 in Madison County, Florida (the "Premises"). Id. at ¶ 7.

20.      The Underlying Plaintiff alleges that on or about February 2, 2023, Ezell Stephens was lawfully walking through the parking lot of the Premises. Id. at ¶ 28.

21.      The Underlying Plaintiff alleges that at that time, there was no pedestrian walkways, traffic control devices, speed control devices, and/or marked lanes for passenger or commercial vehicles at the Premises. Id. at ¶ 29.

22.      The Underlying Plaintiff alleges that Derrick Alexander, an employee of Big Bend Timber Services ("BBTS"), was operating a BBTS-owned 2019 Kenworth tractor-trailer while acting within the course and scope of his employment. Id. at ¶¶ 22, 24-25, 27.

23.      The Underlying Plaintiff alleges that as Alexander turned the tractor-trailer from U.S. Highway 90 into the parking lot of the Premises, he negligently operated the vehicle and struck Stephens, causing severe injuries that resulted in Stephens' death. Id. at ¶¶ 31-32.

24.      The  initial complaint alleges four causes of action, including a common law negligence cause of action against Kinjac. Id. at ¶¶ 48-53.

25.      Upon information and belief, Kinjac tendered the initial complaint in the Underlying Action to Hartford for a defense.

5

26.     Upon information and belief, pursuant to the terms of the Primary Policy, Hartford retained the law firm of McConnaughhay, Coonrod, Weaver & Stern, P.A. ("MCWS") to defend Kinjac in connection with the Underlying Action.

27.     On November 14, 2024, MCWS filed its appearance on behalf of Kinjac. MCWS's appearance filed in the Underlying Action is attached hereto as Exhibit 5.

28.     On November 14, 2024, Kinjac filed its answer and affirmative defenses to the initial complaint. A copy of Kinjac's answer and affirmative defenses are attached hereto as Exhibit 6.

29.     On November 15, 2024, pursuant to Fla. R. Jud. Admin., the Court in the Underlying Action established an initial case management plan and set an expert disclosure deadline of April 23, 2025 (i.e., 160 days from November 15, 2024 – the date of the first response). A copy of the initial case management plan in the Underlying Action is attached hereto as Exhibit 7.

30.     On February 11, 2025, the Underlying Plaintiff filed a motion for leave to amend her complaint. A copy of the motion for leave is attached hereto as Exhibit 8.

31.     The Underlying Plaintiff alleges that Johnson owned, maintained, controlled, and/or operated the Premises. See Ex. 8 at ¶ 2.

32.     On March 4, 2025, the Underlying Plaintiff filed the AC, adding Johnson as a defendant in the Underlying Action. See Ex. 3.

33.     Upon information and belief, Johnson tendered the AC in the Underlying Action to Hartford for a defense.

34.     Upon information and belief, pursuant to the terms of the Primary Policy, Hartford retained the MCWS to defend Johnson in connection with the Underlying Action.

35.     On March 7, 2025, Johnson filed its answer and affirmative defenses to the AC. A copy of Johnson's answer and affirmative defenses is attached hereto as Exhibit 9.

36.     On April 19, 2025, pursuant to Fla. Stat, Sec. 627.4137, the Underlying Plaintiff sent Hartford a letter demanding that Hartford tender its policy limits to settle the Underlying Action. The Underlying Plaintiff's demand noted that Stephens' medical expenses exceeded $3.5 million. A copy of the Underlying Plaintiff's demand is attached hereto as Exhibit 10.

37.     On April 23, 2025, the Underlying Plaintiff disclosed Andrew S. Cherepine (Accident Reconstructionist); Ron Santicola (Gas Station Design); Linda Day (Trucking Operations); Jonathan Eisenstat (Pain & Suffering); Edward Wolpert (Economics); Joellen Gill (Human Factors); Harold Linde (Clinical & Forensic Psychology) in compliance with the expert discovery deadline. A copy of the Underlying Plaintiff's expert disclosures are attached hereto as Exhibit 11.

38.     On April 25, 2025, the Underlying Plaintiff filed a motion for leave to amend her complaint. A copy of the motion for leave is attached hereto as Exhibit 12.

39.     The Underlying Plaintiff alleges that the SAC will reflect the dismissal of Alexander and BBTS from the Underlying Action. See Ex. 12 at ¶ 2.

40.     On July 10, 2025, the Underlying Plaintiff filed the SAC. See Ex. 4.

41.     On December 30, 2025, the Court in the Underlying Action entered an order scheduling the Underlying Action for a jury trial beginning on June 22, 2026. A copy of the order setting case for jury trial is attached hereto as Exhibit 13.

42.     On March 11, 2026, the Underlying Plaintiff amended her expert disclosure to substitute Dr. Stan Smith for of Edward Wolpert. A copy of Underlying Plaintiff's amended expert disclosures are attached hereto as Exhibit 14.

43.     On May 12, 2026, the Insureds disclosed Traci Campbell as a rebuttal expert witness. A copy of the Insureds' fact/expert witness disclosures are attached hereto as Exhibit 15.

44.     On May 28, 2026, the Underlying Plaintiff and the Insureds mediated the Underlying Action. A settlement was not reached, but the parties agreed to adjourn the mediation and continue settlement discussions. A copy of the mediation report filed in the Underlying Action is attached hereto as Exhibit 16.

45.     On June 2, 2026, the Underlying Plaintiff filed a motion to strike the Insureds' rebuttal expert witness because the Insureds failed to disclose their rebuttal expert by the April 23, 2025 expert disclosure deadline. A copy of Underlying Plaintiff's motion to strike the Insureds' rebuttal expert is attached hereto as Exhibit 17.

46.     On June 5, 2026, the Court in the Underlying Action entered an order re-scheduling the Underlying Action for a jury trial beginning on August 10, 2026. A copy of the order setting case for jury trial is attached hereto as Exhibit 18.

47.     On July 7, 2026, the Court in the Underlying Action granted the Underlying Plaintiff's motion to strike the Insureds' untimely-designated expert. A copy of the Court's July 7, 2026 order is attached hereto as Exhibit 19.

### Notice to Hallmark and Hallmark's Investigation

48.     On June 9, 2026, the Insureds' first reported the Underlying Action to Hallmark.

49.     On June 10, 2026, Raphael & Associates ("R&A"), Hartford's third-party administrator ("TPA"), sent an email requesting information to aid in Hallmark's investigation. R&A asked several questions including, but not limited to, the relationship between Kinjac and Johnson,  when the mediation took place, the Underlying Plaintiff's demand, and whether the August 10, 2026 trial date was firm.

50.    On June 23, 2026, R&A learned that the Underlying Plaintiff and the Insureds mediated the Underlying Action on May 28, 2026. The Underlying Plaintiff demanded $21 million after the Insureds' motion for summary judgment was denied. The Insureds' broker recommended putting Hallmark on notice of the Underlying Action following the unsuccessful mediation. R&A also learned that the August 10, 2026 trial date was firm.

51.    On July 1, 2026, R&A received information confirming that Kinjac is a related entity to Johnson, is an additional insured on the Primary Policy with Hartford, and is the real estate holding company that owns the Premises. Johnson leases the Premises from Kinjac.

52.    On July 1, 2026, Hallmark issued a letter to the Insureds. Hallmark advised the Insureds that it was investigating the Underlying Action subject to a reservation of rights, including Hallmark's right to disclaim coverage based on the Insureds' failure to comply with Condition F. of the Excess Policy. A copy of Hallmark's July 1, 2026 letter is attached hereto as Exhibit 20.

53.    On July 8, 2026, R&A received the Underlying Plaintiff's $8.5 million demand in advance of a mediation scheduled for July 28, 2026.

54.    Following receipt and evaluation of multiple emails, hundreds of pages of documents provided by Gallagher Basset, Hartford's TPA, and independently obtaining filings in the Underlying Action, Hallmark's investigation revealed that Kinjac and Johnson are insureds under the Excess Policy; Kinjac entered its appearance and filed its answer and affirmative defenses to the initial complaint in the Underlying Action on November 14, 2024; Johnson filed its answer and affirmative defenses to the AC on March 7, 2025; on April 19, 2025, the Underlying Plaintiff demanded $1 million to settle the Underlying Action; the Underlying Plaintiff disclosed seven expert witnesses on April 23, 2025; the Insureds failed to disclose any expert witnesses by the April 23, 2025 deadline; on December 30, 2025, the Underlying Action was scheduled to

commence a jury trial on June 22, 2026; on March 11, 2026, the Underlying Plaintiff filed an amended expert disclosure; on May 12, 2026, the Insureds' disclosed a rebuttal expert witness; on May 26, 2026, the Court denied the Insureds' motion for summary judgment; the Underlying Plaintiff demanded $21 million to settle the Underlying Action; on May 28, 2026, the parties unsuccessfully mediated the Underlying Action; on June 2, 2026, the Underlying Plaintiff filed a motion to strike the Insureds' expert rebuttal witness as untimely; on June 5, 2026, a trial in the Underlying Action was rescheduled to August 10, 2026; on July 3, 2026, the Underlying Plaintiff demanded $8.5 million to settle the Underling Action; on July 7, 2026, the Court in the Underlying Action granted the Underlying Plaintiff's motion to strike because the Insureds' expert disclosure was untimely; a mediation is scheduled for July 28, 2026; and the August 10, 2026 trial date is firm.

55.     On July 22, 2026, Hallmark issued a supplemental letter disclaiming coverage for the Underlying Action. A copy of Hallmark's July 22, 2026 letter is attached hereto as Exhibit 21.

**COUNT I – DECLARATORY JUDGMENT**
**THE INSUREDS PREJUDICED HALLMARK BY NOT REPORTING THE**
**OCCURRENCE OR SUIT PROMPTLY OR AS SOON AS PRACTICABLE**

56.     StarStone hereby adopts by reference the allegations contained in paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57.     Section IV.F.1 of the Excess Policy provides that the Insureds must see to it that Hallmark receives prompt written notice of an OCCURRENCE or an offense which may result in a claim. The notice should include, how, when and where the OCCURRENCE or offense took place and the names and addresses of any injured person or witnesses. See Ex. 1 at HSIC00035.

10

58. Section IV.F.2. of the Excess Policy provides that if a claim is made or SUIT is brought against any INSURED, the insureds must see to it that Hallmark receives written notice of the claim or SUIT as soon as practicable. Id.

59. Section IV.F.3.a of the Excess Policy provides that, the Insureds must immediately send Hallmark copies of any demands, notices, summons or legal papers received in connection with the claim or SUIT. Id.

60. Section IV.F.4. of the Excess Policy provides, in relevant part, that no INSUREDS shall attempt to settle or otherwise dispose of any claim or SUIT without Hallmark's written consent. Id.

61. Section I.C.1. of the Excess Policy provides, in relevant part, that Hallmark shall have the right and be given the opportunity to be associated in the defense and trial of any SUITS relative to any OCCURRENCE which, in Hallmark's opinion, may create liability on the part of Hallmark under the terms of the Excess Policy. Id. at HSCI00031.

62. On February 2, 2023, Stephens was struck by a tractor-trailer on the Premises. See Ex. 4 at ¶ 29.

63. On April 24, 2023, Stephens died from the injuries he sustained on the Premises. Id. at ¶¶ 1, 35.

64. On October 4, 2024, the Underlying Plaintiff commenced the Underlying Action. See Ex. 2.

65. On November 14, 2024, MCWS entered their appearance and filed Kinjac's answer and affirmative defenses to the initial complaint. See Exs. 5-6.

66. On November 15, 2024, the Court in the Underlying Action set an expert disclosure deadline of April 23, 2025. See Ex. 7.

67.   On March 4, 2025, the Underlying Plaintiff filed the AC. On March 7, 2025, Johnson filed its answer and affirmative defenses to the AC. See Exs. 3, 9.

68.   On April 19, 2025, the Underlying Plaintiff demanded $1 million to settle the Underlying Action. See Ex. 10.

69.   On December 30, 2025, the Court in the Underlying Action entered an order scheduling the Underlying Action for a jury trial beginning on June 22, 2026. See Ex. 13.

70.   On May 12, 2026, the Insureds disclosed Traci Campbell as a rebuttal expert witness – 384 days after the expert disclosure deadline. See Exs. 7 and 15.

71.   On May 28, 2026, the Underlying Plaintiff and the Insureds were unable to settle the Underlying Action during a mediation. See Ex. 16.

72.   On June 2, 2026, the Underlying Plaintiff filed a motion to strike the Insureds' untimely disclosed rebuttal expert witness. The Underlying Plaintiff's motion was granted on July 7, 2026. See Exs. 17 and 19.

73.   On June 5, 2026, the Court in the Underlying Action entered an order rescheduling the jury trial in the Underlying Action. The trial is now set to commence on August 10, 2026. See Ex. 18.

74.   On June 9, 2026, the Insureds first reported the February 2, 2023 OCCURRENCE and the Underlying Action to Hallmark – 62 days prior to trial.

75.   The Insureds reported the Underlying Action to Hallmark:

   a.   1,223 days after Stephens was struck by a tractor-trailer on the Premises;

   b.   1,143 days after Stephens died;

   c.   613 days after the Underlying Plaintiff commenced the Underlying Action;

   d.   572 days after Kinjac filed its answer and affirmative defenses;

12

e.    571 days after the Court entered a scheduling order in the Underlying Action;

f.    459 days after Johnson filed its answer and affirmative defenses;

g.    161 days after the Court scheduled a jury trial in the Underlying Action to begin on June 22, 2026;

h.    28 days after the Insureds first disclosed their rebuttal expert witness;

i.    7 days after the Underlying Plaintiff filed her motion to strike the Insureds' untimely disclosed rebuttal expert witness; and

j.    4 days after the Court rescheduled a jury trial in the Underlying Action to begin on August 10, 2026.

76.    By the time Hallmark first received notice of the OCCURRENCE and Underlying Action, the Insureds did not respond to a $1 million demand to settle the Underlying Action, the Insureds failed to disclose any expert by the April 23, 2025 expert disclosure deadline resulting in their rebuttal expert being stricken for untimely disclosure, the Insureds' motion for summary judgment was denied, and the Insureds participated in a mediation of the Underlying Action.

77.    The Insureds' failure to provide Hallmark with notice of the OCCURRENCE and Underlying Action pursuant to the requirements set forth in Condition F. of the Excess Policy deprived Hallmark of its right and opportunity to meaningfully associate in the defense of the Underlying Action, which caused Hallmark to suffer irreparable prejudice.

78.    Consequently, Hallmark is under no obligation to defend and/or indemnify the Insureds in connection with the Underlying Action pursuant to the terms, conditions, provisions, and exclusions of the Excess Policy.

79. An actual, present, and justiciable controversy exists concerning whether the Insureds complied with Section IV.F. of the Excess Policy, including, but not limited to, whether the Insureds provided Hallmark with prompt written notice of the OCCURRENCE and whether the Insureds provided Hallmark with written notice of the Underlying Action as soon as practicable.

80. Hallmark requests that the Court declare that Hallmark does not have a duty to defend and/or indemnify the Insureds in connection with the Underlying Action because the Insureds failed to comply with Section IV.F. of the Excess Policy, which caused Hallmark to suffer irreparable prejudice.

81. Hallmark further requests that the Court declare that the Excess Policy does not afford coverage for the Underlying Action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Hallmark Specialty Insurance Company, prays that this Court enter an Order:

1. declaring that the Insureds' failure to provide Hallmark with prompt written notice of the OCCURRENCE in accordance with Section IV.F.1 caused Hallmark to suffer irreparable prejudice and, as a result, Hallmark has no duty to defend and/or indemnify the Insureds in connection with the Underlying Action;

2. declaring that the Insureds' failure to provide Hallmark with written notice of the Underlying Action as soon as practicable in accordance with Section IV.F.2 caused Hallmark to suffer irreparable prejudice and, as a result, Hallmark has no duty to defend and/or indemnify the Insureds in connection with the Underlying Action;

3. declaring that the Insureds did not immediately send Hallmark copies of any demands, notices, summons or legal papers received in connection with the Underlying Action in

14

accordance with Section IV.F.3.a., caused Hallmark to suffer irreparable prejudice and, as a result, Hallmark has no duty to defend and/or indemnify the Insureds in connection with the Underlying Action;

4.      declaring that the Insureds attempted to settle or otherwise dispose of the Underlying Action without Hallmark's written consent in breach of Section IV.F.4, caused Hallmark to suffer irreparable prejudice and, as a result, Hallmark has no duty to defend and/or indemnify the Insureds in connection with the Underlying Action;

5.      declaring that the Insureds' failure to comply with Section IV.F. of the Excess Policy deprived Hallmark of its right to be given the opportunity to be associated in the defense of the Underlying Action, caused Hallmark to suffer irreparable prejudice and, as a result, Hallmark has no duty to defend and/or indemnify the Insureds in connection with the Underlying Action;

6.      awarding Hallmark its costs, and expenses together with pre- and post-judgment interest to the greatest extent allowed by law; and

7.      awarding Hallmark all other relief that the Court deems just and equitable.

Dated: July 28, 2026

Respectfully submitted,

HALLMARK SPECIALTY INSURANCE COMPANY

By:  */s/ Juan Garrido*
     Juan Garrido, Esq.
     COZEN O'CONNOR
     200 South Biscayne Blvd, Suite 3000
     Miami, FL 33131
     (305) 397-0832 (telephone)
     (305) 720-2279 (facsimile)
     jgarrido@cozen.com

     Michael J. Weiss (*pro hac vice to be applied for*)

15

Gary L. Gassman (*pro hac vice to be applied for*)
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 474-7977 (telephone) (MJW)
(312) 474-7994 (telephone) (GLG)
(312) 239-3453 (facsimile)
mjweiss@cozen.com
ggassman@cozen.com

16